Turhey, J.,
delivered tlie opinion of tbe court:
Tbe plaintiff in error was indicted in tbe criminal court of Knox county, convicted of murder in tbe first degree, and sentenced to be banged for tbe killing of Mourning Ann Bell, from wbicb j udgment be appealed to tbis court.
After conviction and appeal, be applied to> lion. Oon-nally F. Trigg, judge of tbe United States district court for the eastern district of Tennessee, etc., for writs of babeas corpus, and moved for and procured Ms discharge on tbe ground that wMle in tbe military service of the United States, and subject to tbe articles of war, be was tried and convicted of tbe same murder with wbicb be stands charged by the indictment in tbis case, by a court-martial, convened under tbe laws of tbe United States, during tbe existence of tbe late civil war. He has been subsequently re-arrested under process of capias issued from tbis Court, where bis appeal was pending at tbe time of bis discharge by Judge Trigg. In bis defense now, be relies, as be did in tbe federal court, upon sec. 30 of an act of congress, approved March 3d, 1863 [ch. 75, 12 Stat. at L., 731, 736], which provides that “in time of war, insurrection, or rebellion, murder, assault and battery with intent to kill, manslaughter, mayhem, wounding by shooting or stabbing with an intent to commit murder, robbery, arson, burglary, rape, assault and battery with an intent to commit rape, and larceny, shall be punished by tbe sentence of a general court-martial, or military commission, when committed by persons w’ho are in tbe military service of tbe United States, and subject to the articles of war; and tbe punishment for such offenses shall never be less than those inflicted by tbe *119 laws of the state, territory, or district in. which the ofíense may have been committed.” And upon the act of 5th of February, 1867 [eh. 28, 14 Stat. at L., 385], providing for writs of habeas corpus, etc.
It is as much the duty of the courts of the states as. of the federal courts to construe, apply, and enforce acts of congress and constitutional regulations, when presented in cases before them. State courts having jurisdiction, cannot,, ordinarily, be ousted thereof by an ex parte proceeding directed from, the federal court.
The act of February 5th, 1867, providing for the grant of writs of habeas corpus to persons restrained of liberty in violation of the constitution, or any treaty or law of the United States, did not increase the power or jurisdiction of the several courts of the United States and the judges and justices thereof. The enactment is merely the announcement of a principle and element of power and jurisdiction inherent in the courts, and as capable of enforcement without as with the aid of the statute referred to., and existing as fully in the state as in the federal courts, both acting under and in subordination to the constitution of the United States. But even if this were not so, the plaintiff, in error, does not bring himself within either the spirit or letter of the law; he is not restrained of liberty in violation of the constitution of the United States, nor of any treaty or law thereof. It could not have been intended by congress to attempt to confer upon the federal court or any of its judges, a jurisdiction to interfere with state courts in their exercise of rightful jurisdiction over the persons of offenders against the laws of the state, especially when, as in this case, the question relied on in defense is made by the pleadings in the court of the state, with the indisputable right in the accused to have the action of this court reviewed in the supreme court of the United States, should he desire.
We are clearly of opinion that when the courts of the state have jurisdiction of the person and subject-matter, it. *120 Vas certainly -without the jurisdiction of the federal court to intei’fere with and attempt to supersede the former, and its judgments and decrees in so attempting are nullities.
It is next insisted it was error in the judge of the criminal court to sustain the demurrer to the plea of former conviction for the same identical murder by a court-martial. The consideration of this question necessitates inquiry'as to the objects and purposes of the act of congress of 3d of March, 1863.
This statute was made for a “time of war, insurrection, or rebellion,” and is to be applied to “persons who are in the military service of the United States and subject to the articles of war.”
The act is an army regulation, not less nor more, meant for the government and control of the soldiery, and none other; nor does it intend or contemplate the repeal or suspension of the laws of the state, but on the contrary, in its terms recognizes them.
By assuming the military service and subjecting himself to the laws provided for its government, the. accused did not divest himself of the duty to obey the injunctions of the civil law. The fact that each inflicts similar punishment for crime can make no difference; they intend to affect different relations and enforce different obligations.
In United States v. Marigold, 9 Howard [560, 569, 570--13 L. ed., 257, 261], Judge Daniel_says: “With the view of avoiding conflict between the state and federal jurisdictions, this court, in the case of Box v. The State of Ohio [5 How., 410, 433-12 L. ed., 213, 223], have taken care to point out that the same act might, as to its character and tendencies and the consequences it involved, constitute an offense against both the state and federal governments, .and might draw to its commission the penalties denounced by either as appropriate to its character in reference to each. We think this distinction sound, as we- hold to be the entire doctrines laid down in the case above mentioned, and re *121 gard tbem as' being nowise in conflict with the conclusions adopted in the present case.”
In Moore v. The People of the State of Illinois, 14 How. [13, 20-14 L. ed., 306, 309], Grier, J., says: “Every citizen of the United States is also a citizen of a state or territory. lie may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either.
“The same act may be an offense or transgression of the laws of both. Thus an assault upon the marshal of the United States, and hindering him in the execution of legal process, is a high offense against the United States, for which the perpetrator is liable to punishment, and the same act may also be a gross breach of the peace of the state— a riot, assault, or a murder — and subject the same person to a punishment, -under the state laws for a misdemeanor or a felony. That either or ’both may, if they see fit, punish such an offender, cannot be doubted, yet it cannot be truly averred that the offender has been twice punished for the same offense, but only that by one act -he has committed two offenses, for each of which he is justly punishable.
“He could not plead the punishment by one in bar to a conviction by the other.
In one of the cases involving a construction of the enforcement act [Act of May 31, 1870, ch. 114, 16 Stat. at L., 141], decided in March last [United States v. Cruikshank, 2 Otto, 542, 549, 552-23 L. ed., 588, 590, 591], Chief Justice "Waite, de!ivering_the opinion of the court, after announcing the doctrine just quoted, and employing almost the same language as in Moore v. The People of Illinois, adds:
“This does not, however, necessarily imply that the tiwo governments possess powers in common or that bring them into conflict with each other. It is the natural consequences of a citizenship which owes allegiance to’ two sover-eignties, and claims protection from both. The citizen cannot complain, because he has voluntarily submitted himself *122 to such a form of gwernment. He owes allegiance to the two departments, so to speak, and within respective spheres, must pay the penalties which each exacts for disobedience to its laws.”
In the same opinion, he defines the gwernment of the United States as one of delegated powers alone, and holds that all powers not granted to it by the constitution are reserved to the states or the people. This has been am universally recognized principle of the union of the states from the formation of the federal government, and seems to us to be conclusive of the question presented here, there being no grant of power, directly or indirectly, to' divest a state of its power to punish its citizens for infractions of its laws.
The constitutional provision that no person shall be subject for the same offense to be twice put in jeopardy of life or limb [U. S. Const., 5th amendment; State Const., art. 1, sec. 10], means to protect against a second punishment for the same act of violation against one sovereign, and not that a person may not be guilty and punishable for two distinct crimes perpetrated by one act violative of the laws of different governments, or different municipal authorities of the same government.
We have treated this defense as if it were formally and technically made.
The accused shows by his plea that no punishment was indicted in execution of a judgment of court-martial.
The facts make a clear case of murder in the first degree; in fact,, no defense is offered on the merits.
Affirm the judgment.